IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD F. KLINEBURGER, III, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 16-5637 |
| TINA M. TIERNEY KELL, JAMES R. WOLSKY, MAKR STAFFING INC., and VERSATILE CONCEPTS, | |
| Defendants. | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                 **MAY 1, 2017**

Presently before the Court is Defendants, James R. Wolsky ("Wolsky"), MAKR Staffing Inc. ("MAKR"), and Versatile Concepts' ("Versatile") (collectively, "Defendants") Motion to Dismiss Plaintiff's Amended Complaint, Plaintiff, Richard Klineburger, III.'s ("Plaintiff") Response in Opposition thereto, and Defendants' Reply Brief. For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

**I.     BACKGROUND**

Plaintiff commenced this action against Tina M. Tierney Kell ("Kell"), MAKR, Wolsky, and Versatile by filing a Complaint on October 27, 2016. (Doc. No. 1.) On December 27, 2016, Defendants filed a motion to dismiss the Complaint. (Doc. No. 4.) Subsequently, Plaintiff filed an Amended Complaint on January 13, 2017. (Doc. No. 7.) Plaintiff's Amended Complaint is comprised of six counts against all Defendants including: both a substantive and inchoate count under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts I and II),

1

Fraud (Count III), Unjust Enrichment (Count IV), Intentional Misrepresentation (Count V) and Breach of Contract (Count VI).[1]

MAKR appears to be a legitimate business entity specializing in staffing in the Commonwealth of Pennsylvania as well as other states. (Am. Compl. ¶ 15.) Versatile is a legitimate business entity specializing in software engineering, IT consulting, web development and ecommerce in the Commonwealth of Pennsylvania. (Id. ¶ 17.) Both MAKR and Versatile share the same business address but do not advertise their business relationship or the financial interests of Wolsky in both companies. (Id. ¶ 18.)

On or about March 1, 2010, Plaintiff and Kell entered into a General Partnership Agreement for the company that became known as MAKR.[2] (Id. ¶ 22.) Based on alleged representations made by Kell, Plaintiff contends that he was under the impression that Kell was running MAKR in a proper manner that would be profitable. (Id. ¶ 23.) Plaintiff alleges that he loaned Kell and MAKR tens of thousands of dollars over the course of many years without any receipt of profits and sporadic repayment. (Id. ¶ 24.) Plaintiff "began to wonder about the profits and/or lack thereof and it became apparent that [Kell] was utilizing [MAKR] as a clearinghouse for her own expenses and was not properly running same company." (Id. ¶ 25.) As a result thereof, in April of 2014, the parties entered into a "CONSENT ORDER AND FINAL JUDGMENT BY WAY OF SETTLEMENT AGREEMENT" ("Agreement") under which Plaintiff was to be paid $108,000.[3] (Id.) Plaintiff alleges that in return for this agreement,

---

[1] This Court has jurisdiction over this action and the claims alleged herein under the RICO pursuant to 18 U.S.C. § 1961, et seq. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) in that they arise out of the same common core of operative facts and form part of the same case or controversy as the federal claims.

[2] MAKR was incorporated with the Commonwealth of Pennsylvania on or about March 4, 2010. (Am. Compl. ¶ 22.)

[3] Payments were to be made to Plaintiff for his shares as follows:

he executed a Release and Redemption ("Release") of his stock in MAKR. (Id. ¶ 28.) Not explained by Plaintiff is why the Release was signed in December of 2013 - nearly four months earlier than the date of the Agreement. (Id., Exs. A & B.)

Plaintiff alleges that Kell approached Wolsky about Plaintiff's 49 % interest in MAKR, and Wolsky expressed "excitement." (Id. ¶¶ 29-30.) Plaintiff contends that Wolsky did not inform Kell that he was a competing business owner seeking MAKR's lucrative accounts. (Id. ¶ 31.) Plaintiff alleges that "[a]t all times Wolsky was aware of the obligations that went with purchasing [Plaintiff]'s 49% ownership in MAKR and, in fact, was being specifically brought in by Kell to provide the capital MAKR needed to pay [Plaintiff] that which he is admittedly owed." (Id. ¶ 32.) According to the Shareholders' Agreement, Wolsky paid $142,000 for the shares in MAKR. (Id. ¶ 33, Ex. C.)

Plaintiff alleges that Kell assured him that he would be paid particularly since Wolsky was responsible for the debt as per paragraph 3 of the Agreement that stated it would bind "Tina M. Kell, MAKR Staffing, Inc. it's owners, partners, successor owners and/or assigns (if transferred prior to repayment), and in the event of death prior to repayment, her estate." (Id. ¶ 35.) However, from the onset of acquiring the shares, Wolsky began "muscling" Kell. (Id.

---

> Within ten (10) days of signing this Agreement, or, on or before April 20, 2014, whichever comes first, Tina M. Kell will pay the net sum of twenty five thousand dollars ($25,000.00) to Richard F. Klineburger, III. Thereafter, on or before May 1, 2014, Tina M. Kell will make net monthly payments in the amount of five thousand dollars ($5,000.00) by the first (1st) of every month for eight (8) months (December 1, 2014). Thereafter, beginning on or before January 1, 2015, Tina M. Kell will make monthly payments in the net amount three thousand six hundred dollars ($3,600.00) by the first (1st) of every month for twelve (12) months (December 1, 2015) or until the debt in the amount of one hundred and eight thousand dollars ($108,000.00) is paid in full. Unless otherwise agreed between the parties, all payments will be made directly to Richard F. Klineburger, III at 38 North Haddon Avenue, Haddonfield, New Jersey. In order to effectuate a modification of form and/or method of payment, a request may be made via email to RFKLaw1@aol.com.

(Am. Compl. Ex. A.)

3

¶ 36.) Plaintiff contends that Wolsky apparently unilaterally determined that his "investment" would not be to purchase Plaintiff's shares; rather, he merely booked his obligation to remit these monies as "capital" of the corporation. (Id. ¶ 37.)

As of February 16, 2015, Plaintiff had only received back $20,000 of the $108,000 owed to him according to the Agreement. (Id. ¶ 38.) On February 19, 2015, Kell, allegedly at Wolsky's insistence, proposed a new Repayment Plan. (Id. ¶ 40, Ex. D.) The Repayment Plan would begin on April 1, 2015 and end by January 30, 2016 and would repay Plaintiff his remaining balance of $88,000. (Id.) It is worth noting that Wolsky's name is not mentioned anywhere in the Repayment Plan.

Plaintiff alleges that Wolsky was in control of the finances at all times and maintained total dominion and control over all of MAKR's accounts. (Id. ¶¶ 41-43.) Plaintiff further alleges that Wolsky denied Kell signature authority and mandated that she obtain his approval and signature for every check issued. (Id.) After several complaints regarding not receiving his payments, Plaintiff ended up collecting four checks from Defendants totaling $40,000.[4] (Id. ¶¶ 44-48.)

Plaintiff alleges that Wolsky used this absolute dominion and control over Kell to strip MAKR of its most valuable assets - its client base - and fold all of its contracts into Versatile.[5]

---

[4] The four checks received by Plaintiff are attached to the Amended Complaint as follows: Exhibit E, a personal check from Kell drawn against PNC Bank for $10,000.00 and with "loan payment for shares" in memo section; Exhibit F, a MAKR Staffing check drawn against First Niagara Bank for $10,000.00 and signed by Wolsky with "Capital Payment – Stock Purchase" in memo section; Exhibit G, a Versatile Concepts check drawn against First Niagara Bank for $10,000.00 and signed by Wolsky with "Legal Expenses, Tina Kell" in memo section; and Exhibit H, an undesignated check drawn against First Niagara Bank for $10,000.00 and signed by Wolsky with "Tina Kell for MAKR Staffing" in memo section. (See Am. Compl., Exs. E, F, G, and H.)

[5] Versatile was first registered with the Department of State in March of 2009. (Am. Compl. ¶ 51.) Wolsky announced its "rebranding" to Beacon Box on January 7, 2012, but only incorporated Beacon Box on November 26, 2012. Plaintiff contends that "[a]ny and all assets of MAKR and/or Versatile that were or are housed within the corporate shell of Beacon Box are subject to recall as, among other things, fraudulent transfers." (Id.) Also, Beacon Box, for purposes of liability and by admission of Wolsky is deemed to be Versatile and/or inseparable therefrom. (Id.) To avoid confusion, we will refer to both entities as Versatile.

(Id. ¶ 50.) In September of 2014, Versatile, with Wolsky allegedly operating MAKR as its own, entered a master service agreement with Kelly Services.[6] (Id. ¶ 54.) Plaintiff alleges that "Wolsky was adamant that he wanted all MAKR contracts to go through Versatile because he did not: 'want to pay that Jew lawyer [referring to Plaintiff Klineburger] a penny!'" (Id. ¶ 57.) Specifically, Plaintiff contends that "Wolsky also specifically instructed Kell that so long as [Plaintiff] was owed any monies, ALL MAKR business was to be booked to . . . Versatile." (Id. ¶ 60.)

In sum, Plaintiff alleges that after agreeing to purchase Plaintiff's shares, Wolsky used Versatile to usurp all of MAKR's assets (its valued client list especially) for himself and his partners therein, and he did so specifically to avoid remitting to Plaintiff the monies that he is owed. (Id. ¶ 61.) In February 2016, Wolsky sent a letter to Kell informing her that he was not putting any more working capital into MAKR. (Id. ¶ 63, Ex. I.) Plaintiff alleges that Kell claims to have been completely locked out of all of MAKR's records as of May of 2016. (Id. ¶ 64.) Once Wolsky demanded that all of MAKR's business be run through Versatile and not MAKR, Plaintiff contends that this put MAKR out of business. (Id. ¶ 75.) To date, Plaintiff alleges that he has not received his remaining monies owed by the Defendants in the amount of $58,000.00. (Id. ¶ 77.)

Defendants contend that Plaintiff's Amended Complaint should be dismissed with prejudice for several reasons. Regarding Count I alleging a civil RICO claim, Defendants argue that Plaintiff's Amended Complaint has fatal flaws, which include failing to adequately allege both an "enterprise" and a "pattern" of racketeering activity. (Defs.' Mot. to Dismiss at 7-39.) Defendants then contend that, since the substantive RICO claim in Count I fails, the conspiracy

---

[6] Kelly Services provides on demand consulting to AstraZeneca. (Am. Compl. ¶ 55.)

5

to commit a RICO violation in Count II must fail as a matter of law. (Id. at 39.) In addition, Defendants argue that the remaining state law claims fail as a matter of law. (Id. at 39-50.) For the reasons set forth below, we agree with Defendants that Plaintiff's Amended Complaint fails to adequately allege a claim under Section 1962(c) of the RICO statute. In light of this finding, we will decline to exercise supplemental jurisdiction over the remaining state law claims.

## II.     STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted. Fed. R. Civ. P. 12(b)(6); see also Lucas v. City of Phila., No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)). In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff. Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

The United States Supreme Court ("Supreme Court") set forth in Twombly, and further defined in Iqbal, a two-part test to determine whether to grant or deny a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that these cases signify the progression from liberal pleading requirements to more "exacting scrutiny" of the complaint. Wilson v. City of Phila., 415 F. App'x 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555.

Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they must be supported by factual allegations. Iqbal, 556 U.S. at 679. These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Where there are well-pleaded facts, courts must assume their truthfulness. Iqbal, 556 U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief. Id. at 679. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. 544 at 570). This is not a probability requirement; rather plausibility necessitates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Id. (quoting Twombly, 550 U.S. at 557). In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from conceivable to plausible." Id. at 683; see also Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

The general rule is that "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 n.6 (3d Cir. 2010) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426

7

(3d Cir. 1997)). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Burlington, 114 F.3d at 1426 (citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)); see also Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). The Third Circuit explained:

> The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond. When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.

Pension Benefit, 998 F.2d at 1196-97 (citations omitted).

## III.   DISCUSSION

We will first address the RICO claims in Counts I and II over which we have original jurisdiction. The RICO statute, 18 U.S.C. § 1962, provides, in relevant part, as follows:

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

**A. RICO Section 1962(c) Theory**

Count I of Plaintiff's Amended Complaint alleges that Defendants are liable under Section 1962(c) of the RICO statute. The elements of a civil RICO claim under Section 1962(c) are: (1) the conducting of (2) an enterprise (3) through a pattern, (4) of racketeering activity (5) which results in injury to the plaintiffs' business or property. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). Each of these elements is further defined in the statute and/or case law. Defendants only challenge Plaintiff's RICO claim based on his failure to adequately allege an "enterprise" and a "pattern" as defined in Section 1961(4)-(5); therefore, we will limit our analysis accordingly, and, assume for this Motion only, that Plaintiff has sufficiently pleaded the elements of RICO that Defendants did not address.

*1. "Enterprise"*

RICO defines an "enterprise" broadly as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In Boyle v. United States, the Supreme Court described the flexible scope of an "association in fact" enterprise:

> Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods - by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

556 U.S. 938, 948 (2009).

In United States v. Turkette, 452 U.S. 576 (1981), the Supreme Court identified three characteristics of a RICO "enterprise." The first element requires proof of an "ongoing organization." Id. at 583. To satisfy this element, there must be some mechanism for controlling and directing the affairs of the group on an ongoing, rather than an ad hoc, basis. See United States v. Console, 13 F.3d 641, 650-51 (3d Cir. 1993). The second element requires proof "that the various associates function as a continuing unit." Turkette, 452 U.S. at 583. "To satisfy this element . . . each person must perform a role in the group consistent with the organizational structure established by the first element and which furthers the activities of the organization." Console, 13 F.3d at 651. The third element demands proof that the enterprise is an "entity separate and apart from the pattern of activity in which it engages." Turkette, 452 U.S. at 583. As the Console Court explained: "it is not necessary to show that the enterprise has some function wholly unrelated to the racketeering activity, but rather that it has an existence beyond that which is necessary merely to commit each of the acts charged as predicate racketeering offenses." 13 F.3d at 651-52. Thus, "[t]he enterprise must be (1) an ongoing organization (2) whose associates function as a continuing unit and (3) whose identity is separate and apart from the pattern of racketeering activity in which it engages." United States v. Riccobene, 709 F.2d 214, 221 (3d Cir. 1983) (citing Turkette, 452 U.S. at 583).

Plaintiff has adequately alleged an enterprise. The Third Circuit has held that although these three elements, including separateness, must be proven at trial, all that needs to be pleaded at this stage of the proceedings is the existence of the enterprise. See Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 790 (3d Cir. 1984). In Seville, the district court dismissed the plaintiff's RICO action, concluding that the plaintiff had not properly

10

pleaded each of the three elements necessary to establish a RICO violation as set forth in Riccobene and Turkette. Id. The Third Circuit reversed, explaining:

> In so ruling, the district court confused what must be pleaded with what must be proved. Riccobene and Turkett certainly stand for the proposition that a plaintiff, to recover, must prove that an alleged enterprise possesses the three described attributes. But neither case speaks to what must be pleaded in order to state a cause of action. The district court erred in applying the Riccobene-Turkette proof analysis to the allegations in [plaintiff's] complaint.
>
> We need cite no authority for the proposition that the Federal Rules of Civil Procedure were designed to eliminate the vagaries of technical pleading that once plagued complainants, and to replace them with the considerably more liberal requirements of so-called "notice" pleading. Under the modern federal rules, it is enough that a complaint put the defendant on notice of the claims against him. It is the function of discovery to fill in the details and of trial to establish each element of the cause of action.

Id.

Here, Defendants contend that Plaintiff "pleads no facts upon which one could delineate or identify any structure or organization amongst the Defendants;" therefore, Plaintiff has failed to adequately allege an enterprise. (Defs.' Mot. to Dismiss at 9-22.) Essentially, Defendants allege that Plaintiff's Amended Complaint paints a picture of two feuding shareholders that in no way satisfies the three elements discussed in Turkette. See Turkette, 452 U.S. at 583.

We disagree. Plaintiff's Amended Complaint alleges that "Defendants MAKR and Versatile/Beacon Box and its executive officers, agents, employees, or the like, to wit, Defendants Kell and Wolsky who direct, manage and control the affairs of same, constitute an Enterprise as defined by 18 U.S.C. § 1961(4)." Defendants are asking us to go through the three elements of an enterprise discussed in Turkette in order to see if Plaintiff's Amended Complaint adequately alleges them. (Defs.' Mot. to Dismiss at 9-22.) However, this is the same type of "technical pleading" that was rejected by the Third Circuit in Seville. See Seville, 742 F.2d at

790. Therefore, at this early stage in the case, Plaintiff has sufficiently alleged a RICO "enterprise" under Seville so as to put Defendants on notice of the claims against them. See id.; see also Lickman v. Rivkin, No. 05-1793, 2006 WL 1744753, at *6 (E.D. Pa. June 21, 2016) (finding the allegation that "Jacobs and Rivkin formed and used the Jacobs-Rivkin association, an 'association in fact' and an 'enterprise' within the meaning of [the RICO statute]" was sufficient to overcome defendants' arguments that the plaintiff failed to adequately allege an "enterprise").

### 2. *"Pattern"*

The RICO statute defines a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5); Tabas v. Tabas, 47 F.3d 1280, 1290 (3d Cir. 1995). In H.J. Inc. v. Nw. Bell Tel. Co., the Supreme Court concluded that "to prove a pattern of racketeering activity a plaintiff must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." 492 U.S. 229, 239 (1989). "A pattern is not formed by sporadic activity and a person cannot be subjected to . . . sanctions . . . for committing two widely separated and isolated criminal offenses." Id. at 239. "We must apply a natural and common-sense approach to RICO's pattern element." Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1418 (3d Cir. 1991).

"To prove a pattern a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." United States v. Bergrin, 650 F.3d 257, 266 (3d Cir. 2011). "It is . . . centrally a temporal concept - and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements." H.J. Inc., 492 U.S. at 241-242. Thus, to establish a RICO pattern, the complainant must plead facts

demonstrating (1) at least two predicate acts of racketeering activity, (2) the last of which occurred within ten years after the commission of a prior act of racketeering activity, (3) that are related, and (4) amount to, or pose a threat of, continuing criminal activity. Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997) (citing H.J. Inc., 492 U.S. at 239); see also 18 U.S.C. §§ 1961(5), 1962(c).

Here, we find that Plaintiff's Amended Complaint's bare bone allegations fail to establish that there was a "pattern" of racketeering activity. As discussed above, courts have consistently held that in order to establish a pattern of racketeering activity, there must be both relatedness among the predicate acts and continuity. See, eg., Bergrin, 650 F.3d at 266; see also H.J. Inc., 492 U.S. at 239 ("For analytic purposes relatedness and continuity must be stated separately, though in practice their proof will often overlap."). Plaintiff's Amended Complaint alleges the following predicate acts:

> In those matters and things sent or delivered by the United States Postal Service, by wire and through other interstate electronic media, Defendants falsely and fraudulently misrepresented and fraudulently suppressed material facts from Plaintiff Klineburger in violation of 18 U.S.C. § 1341 and 1343, including but not limited to the following:
>
> a. Defendants misrepresented to Plaintiff Klineburger that they would provide him with payment in full, when they never intended to provide Plaintiff Klineburger with said payment.
>
> b. Defendants intentionally siphoned receipts, contracts, and all assets from MAKR to companies controlled by Wolsky as part of the Enterprise specifically to avoid paying Klineburger -- whom Wolsky repeatedly called "that Jew lawyer" what he was owed for his shares.
>
> c. Defendants intentionally employed a variety of corporate names and devices to shield revenue and assets that properly were booked to MAKR specifically to avoid paying "that Jew lawyer."

    d. Defendants continued to deceive Plaintiff Klineburger by making statements, during telephone calls, text messages, emails and/or in the correspondence mailed to Plaintiff Klineburger, that the monies were on the way when in fact Defendants never intended to make said payments in full.

    e. Defendants used the United States Postal Service, electronic mail and/or fax to provide Plaintiffs with a bogus agreements [sic] which they never intended to honor and in which they misrepresented their intention to pay back Plaintiff Klineburger.

    f. Defendants used the World Wide Web to falsely advertise their "services" as a legitimate and profitable business via their web site and caused Plaintiff Klineburger to rely on false representations contained therein.

    g. Defendants seem to have falsely claimed that Plaintiff Klineburger had performed legal services for them in an effort to utilize said partial payment as an illegal tax write-off.

(Am. Compl. ¶ 112.)

      We find that Plaintiff's alleged predicate acts do meet the first requirement of establishing a "pattern of racketeering activity" as they are sufficiently related. "Predicate acts are sufficiently related when they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Hindes v. Castle, 937 F.2d 868, 872 (3d Cir. 1991). We agree with Plaintiff that the alleged predicate acts are not isolated events. As Plaintiff stated in his Motion, "the alleged 'predicate acts' had one purpose, to obtain, by illegal means, everything of value MAKR held for the benefit of Wolsky and his other shell corporations while withholding monies Plaintiff was owed." (Pl.'s Resp. to Mot. to Dismiss at 25.) At this early stage in the case, these alleged predicate acts show enough relatedness to overcome a motion a dismiss. Essentially, the

predicate acts allege a scheme, not isolated events, that had the ultimate goal of withholding what was allegedly owed to Plaintiff.

However, we find that Plaintiff has failed to prove that second element required to establish a "pattern a racketeering activity" - continuity. The so-called continuity requirement "is centrally a temporal concept, and may be either closed - or open-ended." H.J. Inc., 492 U.S. at 230; see also World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 530 F. Supp. 2d 486, 497 (S.D. N.Y. 2007) ("The continuity necessary to prove a pattern can be either 'closed-ended continuity,' or 'open-ended continuity.'"). Close-ended continuity can be shown by proving a series of related predicates extending over a substantial period of time. Id.

Plaintiff does not contend that close-ended continuity exists; rather, he just argues that he has adequately alleged open-ended continuity. (Pl.'s Resp. to Mot. to Dismiss at 26-27.) H.J. Inc. suggests that open-ended continuity may be satisfied "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business . . . or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'" 492 U.S. at 243. Before the H.J. Inc. decision, the Third Circuit had provided a list of factors to use to determine the existence of a "pattern": 1) the number of unlawful acts; 2) the length of time over which the acts were committed; 3) the similarity of the acts; 4) the number of victims; 5) the number of perpetrators; and 6) the character of the unlawful activity. Barticheck v. Fidelity Union Bank/First Nat'l State, 832 F.2d 36, 39 (3rd Cir. 1987). After H.J. Inc., the Third Circuit instructs that these additional Barticheck factors be considered "where relatedness and continuity are in doubt." Emcore Corp. v. PricewaterhouseCoopers, LLP, 102 F. Supp. 2d 237, 250 (D.N.J. 2000) (quoting Tabas, 47 F.3d at 1296 & n.21).

Open-ended continuity occurs where past conduct projects into the future by its very nature with a threat of repetition. H.J. Inc., 492 U.S. at 242. The Supreme Court illustrated the open-ended theory with two examples. One is where a "hoodlum" sells insurance to neighborhood shopkeepers to cover them against breakage of their windows, "telling his victims he would be reappearing each month to collect the 'premium' that would continue their 'coverage.'" Id. In this scenario, open-ended continuity is established since there is threat of repetition on a monthly basis. The second example is where the predicate acts are the entity's regular way of doing business. Id.

Here, Plaintiff's Amended Complaint does nothing more than allege a single scheme specifically devised by Defendants to avoid having to pay Plaintiff the monies that he is allegedly owed. (Am. Compl. ¶ 112.) Realizing his deficiencies regarding the continuity requirement in his original Complaint, Plaintiff added the following averment in his Amended Complaint in an attempt to save his RICO claim:

> It is believed, and therefore averred, that Wolsky has been involved in similar transactions that resulted in him obtaining the exact dominion and control over those competing entities, with the exact same end result of the Enterprise somehow obtaining all assets and goodwill of the subject company(ies). In his wake, Wolsky leaves shareholders – like Klineburger, and "investors" empty handed.

(Id. ¶ 84.) Plaintiff has also stated in his Amended Complaint that "[i]f not stopped, Defendants will continue to perpetrate their scheme and defraud Plaintiff Klineburger from his hard earned money." (Id. ¶ 92.)

Besides these general allegations, Plaintiff has failed to make any factual averments that Defendants have attempted, or in the future will attempt, similar actions against other companies and/or individuals. The assertions in Plaintiff's Amended Complaint are conclusions of law and, although we accept all the complaints material allegations as true for purposes of deciding a Rule

12(b)(6) motion, we need not accept as true conclusory allegations of law. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); see also Mineo v. McEachern, No. 12-01950, 2014 WL 2197032, at *2 (D.N.J. May 27, 2014) (holding that in a RICO claim, conclusory allegations are not enough to show open-ended continuity).

Other courts have rejected similar arguments by plaintiffs who have attempted to rely on conclusory allegations to adequately allege the continuity factor of a RICO claim. See Lickman v. Rivkin, No. 05-1793, 2006 WL 1744753, at *5-6 (E.D. Pa. June 21, 2016) (rejecting plaintiff's attempts to use bare allegations to prove open-ended continuity and, as a result, granting motion to dismiss for failing to adequately allege a pattern of racketeering activity); see also Guaranty Residential Lending, Inc. v. Int'l Mortg. Ctr., 305 F. Supp. 2d 846, 860 (N.D. Ill. 2004) ("Plaintiff conclusorily alleges that defendants' conduct represented a regular way of doing business and a threat of continued conduct. Such conclusory allegations, however, are not sufficient to allege open-ended continuity, specific facts must support such a conclusion."); FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F. Supp. 2d 362, 370 n.9 (E.D. N.Y. 2002) (finding plaintiff's argument that defendants' conduct in seeking payment under a letter of credit incorporated into a contract a year before gives rise to an inference of a continuing threat and plaintiff's assertion that "if [defendants] were willing to do such an outrageous thing here, what would stop them from doing it again" to be wholly conclusory and speculative).

Plaintiff's Amended Complaint reveals that the scheme at issue is very narrowly defined. Based on the factual allegations, the scheme's singular aim is to withhold monies owed to Plaintiff. (See, e.g., Am. Compl. ¶ 92 ("If not stopped, Defendants will continue to perpetrate their scheme and defraud Plaintiff Klineburger from his hard earned money."); id. ¶ 112 ("Defendants intentionally siphoned receipts, contracts, and all assets from MAKR to companies

17

. . . specifically to avoid paying [Plaintiff]. . . . Defendants intentionally employed a variety of corporate names and devices to shield revenue and assets . . . specifically to avoid paying [Plaintiff].")). In his own Motion, Plaintiff admits that the predicate acts had only one purpose – "to obtain, by illegal means, everything of value MAKR held for the benefit of Wolsky and his other shell corporations while withholding monies Plaintiff was owed." (Pl.'s Resp. to Mot. to Dismiss at 25.)

The Third Circuit has resisted efforts to generate RICO claims from "garden variety" torts, see, e.g., Banks v. Wolks, 918 F.2d 418, 423 (3d Cir. 1990), and that seems to be precisely what Plaintiff has attempted to do here. This is nothing more than a breach of contract claim that Plaintiff has unsuccessfully attempted to morph into a civil RICO claim. If we were to allow these conclusory allegations to constitute a "pattern of racketeering activity," then any plaintiff with a complaint involving two or more predicate acts could instantly create a RICO complaint that would withstand a motion to dismiss by simply claiming a threat of repetition. Plaintiff has not pleaded sufficient factual allegations to survive Rule 12(b)(6) dismissal as he has alleged nothing more than a short-lived scheme directed to improperly withhold monies owed to him. See Kehr, 926 F.2d at 1413 ("[A]lthough a single fraudulent scheme can give rise to RICO liability, when that scheme is short-lived and directed at a limited number of people, this court has required some further indication that the defendant's fraudulent activities are likely to continue."). Therefore, Count I of Plaintiff's Amended Complaint alleging that Defendants are liable under Section 1962(c) of the RICO statute is dismissed with prejudice.[7]

---

[7] Plaintiff does not seek leave to amend his Amended Complaint, however, that does not mean we should automatically dismiss Plaintiff's RICO claims with prejudice. See Alston v. Parker, 363 F.3d 229, 235-36 (3d Cir. 2004) ("[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile . . . . Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility.") (citations omitted). Here, we find that a second amended complaint would be futile. Plaintiff has already previously attempted to cure his deficiencies in regards to the "continuity" requirement of a RICO claim when he filed his

**B. RICO Section 1962(d) Theory**

Plaintiff's claim for Conspiracy to Commit RICO under Section 1962(d) will also be dismissed as a matter of law since we found, for the reasons discussed above, that he has failed to sufficiently plead a substantive RICO claim. See Macauley v. Estate of Nicholas, 7 F. Supp. 3d 468, 485-486 (E.D. Pa. 2014) ("[A]ny claim under section 1962(d) based on a conspiracy to violate any of the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

**C. Supplemental Jurisdiction Over State Law Claims**

Jurisdiction over supplemental state law claims is governed by 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The Court has discretion to decline to exercise supplemental jurisdiction, if it "has dismissed all claims over which it has original jurisdiction," or if "in exceptional circumstances, there are compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(3), (4). As to (c)(3), "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for [exercising supplemental jurisdiction]." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted).

---

Amended Complaint but added nothing more than bare allegations. We find that allowing Plaintiff to file a second amended complaint would not change the fact that Plaintiff is unable to adequately allege open-ended continuity. Plaintiff has already had ample opportunity to plead his allegations properly and completely. See Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654–55 (3d Cir. 1998) (rejecting proposed second amended complaint where plaintiffs were repleading facts that could have been pleaded earlier.) Thus, such amendment is futile.

For the reasons set forth above, Plaintiff has failed to plead cognizable RICO claims over which we have original jurisdiction. Therefore, we "must" decline to exercise supplemental jurisdiction over the pendant state law claims in Counts III-VI of the Complaint. As this case is in its earliest pleading stage, judicial economy, convenience, and fairness to the parties do not provide an affirmative justification for exercising supplemental jurisdiction over Plaintiff's remaining state law claims.

## IV.     CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss is granted in part and denied in part. Counts I and II of Plaintiff's Amended Complaint regarding the RICO claims are dismissed with prejudice. In addition, we decline to exercise supplemental jurisdiction over Counts III, IV, V and VI of the Amended Complaint.

An appropriate Order follows.